UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

.

BRYAN ZALA CHAPMAN HOWE,

                Petitioner,

                                        Case No. 16-11661

v.                                     Honorable Victoria A. Roberts

KATHLEEN OLSON,

                Respondent.

_____/

## OPINION AND ORDER
## (1) DENYING THE AMENDED HABEAS CORPUS PETITION,
## (2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY,
## AND (3) GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

This matter comes before the Court on a *pro se* amended petition filed by Bryan Zala Chapman Howe ("Petitioner") under 28 U.S.C. § 2254. (ECF No. 11.) Petitioner challenges his state convictions for operating or maintaining a methamphetamine laboratory, Mich. Comp. Laws § 333.7401c(1)(a), Mich. Comp. Laws § 333.7401c(2)(f), and conspiracy to operate or maintain a methamphetamine laboratory, Mich. Comp. Laws § 750.157a, Mich. Comp. Laws § 333.7401c. Petitioner raises eight grounds for relief regarding the trial court's jury instructions, the prosecutor's conduct, evidentiary matters, his trial and appellate attorneys, and his rights to defend himself and to confront the witnesses against him. Because his

claims do not warrant habeas relief, the Court will deny the amended petition and dismiss the case with prejudice.

## I. Background

The charges against Petitioner arose from allegations that on December 1, 2011, he used a house in Forsyth Township, Michigan to manufacture methamphetamine and that he conspired with Aaron Armatti ("Armatti"), Richard Hill ("Hill"), or other persons to manufacture methamphetamine. Vickie Lara ("Lara") and Bridget Black ("Black") also assisted in the crimes to some extent.

Petitioner went to trial before a jury in Marquette County Circuit Court. The state appellate court accurately summarized the testimony at trial as follows:

> On December 1, 2011, defendant arrived at Marquette General Hospital with severe and suspicious burns. After a brief investigation, the police located what appeared to be a methamphetamine laboratory in Aaron Armatti's house. Further investigation led the police to believe that there had been a conspiracy to manufacture methamphetamine and that defendant had been actively involved. At trial, there was testimony from defendant's ex-girlfriend, Bridgett Black, that her role had been to obtain pseudoephedrine.[1] She was apparently told by defendant exactly what to obtain, but the first time she purchased the drug, she obtained the wrong kind or the wrong dose and defendant yelled at her. Black's testimony was corroborated by the testimony of Vickie Lara, an upstairs tenant, who also purchased pseudoephedrine. Because she obtained the wrong type or amount of medication, Black went with Richard Hill, another conspirator, to purchase more. Before they left the house, defendant allegedly told Hill to purchase other ingredients necessary to manufacture methamphetamine, including lithium

---

[1] Pseudoephedrine is an ingredient found in certain over-the-counter cold medicines that can be used in the production of methamphetamine. In this case, Black testified that she was sent to purchase Sudafed.

batteries, fuel, and an ice pack.  While they were away, Armatti, the owner of the house, claimed he saw defendant cleaning pseudoephedrine pills in the sink.  When they returned, Armatti claimed he saw Hill and defendant in the kitchen and that defendant was putting pills into a Gatorade bottle.

Armatti claimed that awhile later he heard Hill shouting "Get in the shower.  Get in the shower."  Armatti said he saw flames in the living room and that there were "little round fires, like, probably 10, 15 in the kitchen."  He said he put out the fires in the living room with a blanket, and that the kitchen was "just blazing hot" and the fire was "blue from chemicals."  Defendant ran outside on fire and rolled in the snow twice before searching for his car and driving himself and Black to the hospital.

Defendant's theory of the case was that he was in the wrong place at the wrong time.  He asserted that he fell asleep on the couch after using morphine, woke up once and took more morphine, woke up a second time and walked into the kitchen just in time to see Armatti flipping a bottle.  Then there was an explosion that set him on fire. Defendant testified that he believed the other persons present while methamphetamine was being cooked decided to blame him because they believed he would die from his injuries.

*People v. Howe*, No. 313143, 2014 WL 2118160, at *1 (Mich. Ct. App. May 20, 2014) (unpublished) (footnote in original).

On August 3, 2012, the jury found Petitioner guilty, as charged, of operating or maintaining a methamphetamine laboratory and conspiracy to operate or maintain a methamphetamine laboratory.  On September 7, 2012, the trial court sentenced Petitioner to two concurrent terms of seven to twenty years in prison.

In an appeal of right, Petitioner argued that:  (1) inflammatory evidence about the (a) the dangerousness of methamphetamine laboratories and (b) the severity of

the methamphetamine problem, and irrelevant hearsay evidence deprived him of a fundamentally fair trial and due process; (2) evidence that Hill was convicted of the exact same offense required a new trial; (3) he should have been permitted to cross-examine a witness about the Chief of Police telling her that she botched another case; (4) the trial court erred by refusing to instruct the jury on (a) addict informants and (b) mere presence; (5) resentencing was necessary due to reliance on improper considerations and improper scoring of offense variables; and (6) defense counsel's failure to make proper objections and a record deprived him of effective assistance of counsel.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentence, *see id.*, and on November 25, 2014, the Michigan Supreme Court denied leave to appeal. *See People v. Howe*, 497 Mich. 905; 856 N.W.2d 22 (2014). Petitioner moved for reconsideration, but on March 31, 2015, the state supreme court denied reconsideration. *See People v. Howe*, 497 Mich. 985; 861 N.W.2d 2 (2015).

Petitioner subsequently raised a sentencing issue in a motion to remand, which he presented to the state trial court. (ECF No. 17-8.) Because there was nothing pending before a higher court, the trial court treated the motion as a motion for post-appellate relief and denied the motion. (ECF No. 17-9.) Petitioner sought reconsideration and raised most of his habeas claims in a motion to amend the motion for post-appellate relief. (ECF Nos. 17-10 and 17-13.) The trial court denied

Petitioner's motion for post-appellate relief because the issues were raised or could have been raised on appeal, the issues lacked merit, or Petitioner did not suffer any prejudice from the claimed errors.   *See People v. Howe*, No. 12-50377-FH (Marquette Cty. Cir. Ct. Jan. 14, 2016) (ECF No. 17-14.)

While Petitioner's appeal from the trial court's decision was pending in the Michigan Court of Appeals, he filed his initial petition for the writ of habeas corpus and a motion to stay the case.  (ECF Nos. 1 and 2.)  On June 15, 2016, the Court granted Petitioner's motion for a stay and closed this case so that Petitioner could pursue additional state remedies.  (ECF No. 5.)

The Michigan Court of Appeals subsequently denied leave to appeal because Petitioner failed to establish that the trial court erred in denying his motion for relief from judgment.  *See People v. Howe,* No. 332572 (Mich. Ct. App. Sept. 27, 2016), ECF No. 17-18, PageID.1507.  On May 31, 2017, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under the Michigan Court Rules.  *See People v. Howe*, 500 Mich. 1000; 895 N.W.2d 512 (2017).[1]

On July 14, 2017, Petitioner returned to federal court with a motion to re-open this case (ECF No.  9) and an amended habeas corpus petition (ECF No. 11), which

---

[1] Justice Kurtis Wilder did not participate in the decision because he sat on the Court of Appeals panel.

incorporates Petitioner's brief in the Michigan Supreme Court during the post-appellate proceedings.  On August 7, 2017, the Court granted Petitioner's motion to re-open the case and ordered the Clerk of Court to serve the amended petition on the State.  (ECF No. 12.)

Warden Kathleen Olson ("Respondent") subsequently filed an answer to the petition in which she argues that Petitioner's claims are not cognizable on habeas review or they lack merit and any error was harmless.  Respondent also asserts that Petitioner procedurally defaulted claims three through seven and that the Michigan Court of Appeals reasonably rejected claim eight.  (ECF No. 16, PageID.377-379.)

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  The Court "cut[s] to the merits" here, because Petitioner's claims do not warrant habeas relief and a procedural-default analysis would only complicate the case.  *Thomas v. Meko*, 915 F.3d 1071, 1074 (6th Cir.) (citing *Storey v. Vasbinder*, 657 F.3d 372, 380 (6th Cir. 2011)), *cert. denied*, 139 S. Ct. 2726 (2019).

## II.  Discussion

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on

an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' " *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).

"A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*,  521 U.S. 320, 333, n. 7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  "Only an 'objectively unreasonable' mistake, . . . , one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019).

The Court must presume that a state-court's factual determinations are correct unless the petitioner rebuts the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Court's review, moreover, generally is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Of course, "[i]f . . . the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies. Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## A. Variance in the Jury Instructions (Claim I)

Petitioner alleges that the trial court's initial instructions to the jury on the elements of the charges differed from the instructions given at the end of the trial and that the variance between the two sets of instructions constructively amended the charged crimes. Petitioner points out that, although the criminal complaint did not charge him with an attempt to manufacture methamphetamine, the trial court instructed the jury on "attempt" during the court's charge to the jury.

Petitioner argues that the instructions on "attempt" broadened the basis for a conviction and likely led the jury to convict him of attempt to manufacture methamphetamine, even though attempt is a separate crime for which he was not charged. He also contends that the final instructions violated his constitutional rights

8

to notice of the charges and to have the prosecutor prove every element of the crimes beyond a reasonable doubt.

Petitioner first raised this claim in his application for leave to appeal in the Michigan Supreme Court on direct review. The state supreme court allowed Petitioner to raise the new issue, but it denied leave to appeal without addressing the merits of the claim.

Petitioner raised the issue again in his motion for post-appellate relief. The trial court rejected the claim in the mistaken belief that the Michigan Court of Appeals addressed the issue on direct appeal. The State's appellate courts subsequently denied leave to appeal. Thus, none of the state courts adjudicated Petitioner's claim on the merits, and this Court's review is *de novo*. *Stermer*, 959 F.3d at 721.

### 1. Legal Framework

The Supreme Court stated in *Jackson v. Virginia*, 443 U.S. 307 (1979), "that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process." *Id*. at 314. Therefore, "a person cannot incur the loss of liberty for an offense without notice and a meaningful opportunity to defend." *Id*.

The Supreme Court also "has held 'that the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *Henderson v.*

*Kibbe*, 431 U.S. 145, 153 (1977) (quoting *In re Winship,* 397 U.S. 358, 364 (1970)). But the question on collateral review of a jury instruction "is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process', not merely whether 'the instruction is undesirable, erroneous, or even 'universally condemned.' " *Id.* at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 146 (1973)).

As noted above, Petitioner maintains that the final jury instructions in his case amounted to a constructive amendment of the charges against him. Constructive amendments to a charge are *per se* prejudicial, warranting reversal. *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999). Similarly, "[a] modification at trial that acts to broaden the charge contained in an indictment constitutes reversible error." *Id.* at 416 (citing *Stirone v. United States,* 361 U.S. 212, 217–19 (1960)). But "[a] variance [in the charge] is not reversible error unless the defendant demonstrates prejudice," and "[a] variance becomes a constructive amendment 'only when the variance creates a substantial likelihood that a defendant may have been convicted of an offense other than [the charged crime]." *United States v. Beasley*, 583 F.3d 384, 389–90 (6th Cir. 2009) (alterations added; citations omitted).

## 2. Application

The amended Felony Information in Petitioner's case charged him with operating or maintaining a laboratory involving methamphetamine and conspiracy

to operate or maintain a laboratory involving methamphetamine. *See* Am. Pet., Ex. F, Dkt. 11-1, PageID.272. More specifically, in count one, Petitioner was charged with using a place (in this case, a house) to manufacture methamphetamine. *Id.* In count two, he was charged with conspiracy to use a place that he knew or had reason to know would be used or was intended to be used to manufacture methamphetamine. *Id.*

During the trial court's preliminary instructions, the court instructed the jury on the elements of the crimes as follows:

> As to Count 1, operating or maintaining a lab involving methamphetamine. To prove this charge the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant, Bryan Howe, used a building, in this case a house;
>
> And, second, that Bryan Howe knew or had reason to know the house was intended to be used as a location to manufacture a controlled substance;
>
> And, third, that Bryan Howe knew the controlled substance was methamphetamine.
>
> Now, as to Count 2, that is conspiracy to use a house as a location to manufacture methamphetamine, the prosecutor must prove each of the following elements beyond a reasonable doubt:
>
> First, that the defendant, Bryan Howe, again, used a building, in this case a house;
>
> Second, that Bryan Howe and someone else, in this case the prosecution contends Aaron Armatti or Richard Hill, that is Brian Howe

and either one of these people, knowingly agreed to use that house as a location to manufacture methamphetamine;

And, third, that the defendant, Bryan Howe, specifically intended to commit or help commit the crime;

And fourth, that this agreement took place on or about December 1, 2011.

7/31/12 Trial Tr. at 86-87, Dkt. #17-3, PageID.564-565.

The trial court's final instructions to the jury differed from the preliminary instructions in that they included the words "attempt" or "attempting."  When explaining the second and third elements of the first count, the court stated that the prosecutor had to prove that Petitioner "used the house as a location to manufacture *or attempt to manufacture* a controlled substance" and "knew the controlled substance he was manufacturing *or attempting to manufacture*" was methamphetamine.  8/2/12 Trial Tr. at 616, ECF No. 17-5, PageID.1095.  The trial court included comparable language in its explanation of the second and third elements for the conspiracy charge.  *Id*. at 616-617, PageID.1095-1096.

Petitioner maintains that use of the terms "attempt" and "attempting" in the final jury instructions broadened the charged offense because he was not charged with attempting to manufacture methamphetamine.  It is true that Petitioner was not charged with attempting to manufacture methamphetamine, but he also was not charged with manufacturing methamphetamine.  Rather, he was charged with *use* of a place to manufacture methamphetamine.  The critical issues were his intent in

12

using the house, whether he participated in operating or maintaining a laboratory involving methamphetamine, and whether he conspired with other individuals to use the house for operating or maintaining a laboratory involving methamphetamine.

Further, the relevant statute defines the term "manufacture" as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, directly or indirectly by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis." Mich. Comp. Laws § 333.7401c(7)(c). By definition, "manufacture" includes the preparation and processing of a controlled substance.

Petitioner disagrees with this interpretation of the statute. He relies on *People v. Meshell*, 265 Mich. App. 616; 696 N.W.2d 754 (2005), in which the Michigan Court of Appeals wrote: "With respect to manufacturing methamphetamine, the elements are (1) the defendant manufactured a controlled substance, (2) the substance manufactured was methamphetamine, and (3) the defendant knew he was manufacturing methamphetamine." *Id.,* 265 Mich. App. at 619; 696 N.W.2d at 758. Notably, however, the three-judge panel concluded that there was sufficient evidence of manufacturing methamphetamine where the methamphetamine was "cooking" and "in the process of being manufactured." *Id.*, 265 Mich. App. at 620-621; 696 N.W.2d at 759.

When determining whether the defendant operated or maintained a methamphetamine laboratory, the Court of Appeals accepted the following description of the elements of the crime: "(1) the defendant used a building or structure and (2) the defendant knew or had reason to know that the building or structure was to be used as a location for manufacturing methamphetamine." *Id*., 265 Mich. App. at 624; 696 N.W.2d at 760. The Court of Appeals held that the evidence was sufficient to convict Meshell of operating and maintaining a methamphetamine laboratory even though the methamphetamine was still "cooking" or "off-gassing" at the time. *Id*., 265 Mich. App. at 624-625; 696 N.W.2d at 760-761.

Sergeant Brian Kjellin testified at Petitioner's trial that he did not know whether the process of making methamphetamine was complete when the Gatorade bottle ruptured or whether the individuals present were in the process of making methamphetamine. 7/31/12 Trial Tr. at 170, ECF No. 17-3, PageID.648. Detective Sergeant Ron Koski was more certain. He testified that the individuals were in the first of three phases of manufacturing methamphetamine and that Phase 1 is the "cooking" of methamphetamine. *Id*. at 224-227, PageID. 702-705. The testimony of Kejellin and Koski was sufficient to establish that methamphetamine was "manufactured," as that term is defined in the statute and interpreted in *Meshell*.

14

There is not a substantial likelihood that Petitioner was convicted of an offense other than the charged crimes.

Furthermore, as Respondent points out, a defense that Petitioner merely attempted to make methamphetamine would have been inconsistent with his testimony that he was sleeping during the manufacturing of methamphetamine and merely present when the fire occurred.  Because he did not claim to be innocent as a result of merely using a house in an attempt to manufacture methamphetamine, he was not prejudiced by the alleged variance or constructive amendment in the final jury instructions.  Any error in the final jury instructions was harmless.  The Court denies relief on Petitioner's first claim.

## B.  Subornation of Perjury (Claim II)

Petitioner alleges that the prosecutor suborned perjury by failing to correct testimony that he knew or should have known was untrue.  The contested testimony was Armatti's comment that his "only charge . . . till now" was domestic violence. 8/1/12 Trial Tr. at 344, ECF No. 17-4, PageID.822.  Petitioner asserts that Armatti was charged with twenty-seven offenses and that the prosecutor violated his rights to due process and a fair trial by failing to correct Armatti's testimony,  because the jury never learned the full extent of Armatti's criminal history.

Petitioner first raised this issue in his motion for post-appellate relief.  The trial court rejected the claim because it mistakenly believed that the Michigan Court

of Appeals addressed the claim on direct appeal.  The trial court also stated that Petitioner did not provide any additional support for the conclusion that the prosecutor knowingly elicited false testimony.

### 1.  Clearly Established Federal Law

The "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.' "  *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  Nevertheless, "[a] conviction obtained through the knowing use of perjured testimony must be set aside [only] if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury.' "  *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (quoting *Giglio,* 405 U.S. at 154).

> To prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *see also Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012) (listing the same three elements).

"[O]rdinarily, claims of perjury must also overcome a harmless-error analysis."  *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019).  On habeas

review, an error is harmless unless it had a "substantial and injurious effect or influence" on the jury's verdict. *Brecht v. Abrahamson,* 507 U.S. 619, 637-38 (1993).

## 2. Application

Armatti's criminal history came to light when the prosecutor asked him whether he had met Petitioner before the incident at Armatti's home. Armatti answered: "I seen (sic) him one time in Marquette County Jail, I was in for domestic violence. My only charge I ever had up till now." 8/1/12 Trial Tr. at 344, ECF No. 17-4, PageID.822.

Even if the prosecutor knew that Armatti's criminal history was more extensive than Armatti claimed, defense counsel elicited additional information from Armatti on cross-examination. Armatti then admitted that he was re-charged with domestic violence because he "screwed up [his] delayed sentence," that he was convicted of driving on a suspended license, that he pleaded guilty to larceny, and that another larceny charge was dropped. *Id.* at 372-373, PageID.850-851. He also admitted that initially he was charged with operating and maintaining a drug house as a result of the incident at his house on December 1, 2011. *Id*. at 392, PageID.870. Given these admissions and the fact that Armatti's testimony against Petitioner was corroborated by other evidence, the prosecutor's alleged subornation of perjury was harmless. The Court denies relief on Petitioner's claim.

**C. Hearsay** (Claim III)

Petitioner alleges next that the trial court abused its discretion when the court (1) allowed Armatti to give hearsay testimony and (2) accepted the prosecutor's explanation for why the testimony was an exception to the hearsay rule. This issue arose when the prosecutor asked Armatti whether there was a conversation about methamphetamine at his house. Armatti responded by indicating that Hill asked him about methamphetamine and that he was sure Hill said the same thing to Petitioner. *Id.* at 349, PageID.827. Defense counsel immediately objected on grounds that there was no foundation for Armatti's remark and that it was hearsay. The prosecutor then said, "[I]t is a statement by a co-conspirator against interests." *Id.* Defense counsel disagreed, and Armatti interjected, "I know he had to have an agreement . . . ." *Id.* The trial court then overruled defense counsel's objection and allowed the prosecutor to proceed. *Id.* Petitioner asserts that Armatti's testimony was extremely prejudicial and that the prosecutor's argument was based on an illusory exception to Michigan's hearsay rule.

Petitioner raised this issue during post-conviction proceedings. The trial court rejected the claim because Petitioner could have raised the issue on appeal and because the error was harmless.

This Court finds no merit in the claim because "[w]hat is or is not hearsay evidence in a state court trial is governed by state law," *Johnson v. Renico*, 314 F.

Supp. 2d 700, 705 (E.D. Mich. 2004), and federal habeas courts usually do not question state-court rulings on the admission of evidence under state law.  *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988).  A state court's evidentiary error rises to the level of a federal constitutional claim warranting habeas corpus relief only if the error rendered "the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

It was not fundamentally unfair to allow Armatti to testify about the conversations in his house before the fire because the prosecutor had the burden of proving a conspiracy, and any conversations about making methamphetamine were relevant to the conspiracy charge.  Moreover, the testimony may have been admissible under Michigan Rule of Evidence 801(d)(2)(E) ("The statement is offered against a party and is . . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy").

Even if the testimony were inadmissible under state law, Black testified that everyone in the room, including Petitioner, took part in the discussion about making methamphetamine.  8/1/12 Trial Tr. at 412-413, 447-448, ECF No. 17-4, PageID.890-891, 925-926.  As such, the alleged hearsay error was harmless.  The Court declines to grant relief on Petitioner's claim.

### D.  Propensity Evidence (Claim IV)

Petitioner alleges that the trial court abused its discretion by allowing propensity evidence to be admitted, despite his objection to the evidence.  The disputed evidence was Armatti's testimony that Petitioner:  "blew up three times before this.  This is the third or fourth time of blowing up making meth.  You think he'd quit going around peoples' houses cooking meth."  *Id*. at 401, PageID.879.  Although defense counsel moved to strike the comments because there was no question before Armatti, the trial court simply instructed Armatti to answer defense counsel's questions. *Id*. at 401-402, PageID.879-880.  Petitioner asserts that the testimony violated the Michigan Rules of Evidence and that the trial court should have struck the testimony instead of ignoring it.

Petitioner raised this issue in his motion for post-appellate relief.  The trial court rejected the claim because Petitioner did not raise the issue on appeal and because Petitioner did not establish "actual prejudice" from the failure to raise the claim.

In Michigan, evidence of other crimes, wrongs, or acts can "be admissible . . . as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case."  Mich. R. Evid. 404(b)(2).

Thus, there was some basis for not striking Armatti's "other acts" testimony.

Even if the testimony "violated Michigan's rules of evidence, such errors are not cognizable on federal habeas review," *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009), because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). When "conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

"[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules," *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983). In fact, "states have wide latitude with regard to evidentiary matters under the Due Process Clause," *Wilson v. Sheldon*, 874 F.3d 470, 476 (6th Cir. 2017), and "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). For all these reasons, the Court declines to grant relief on Petitioner's claim about propensity evidence.

### E.  Use of a Demonstrative Aid (Claim V)

Petitioner contends that the trial court abused its discretion by permitting the prosecutor to use a demonstrative aid as substantive evidence of Petitioner's guilt.

The aid was a videotape, which apparently showed how a bottle used to make methamphetamine can catch on fire and appear to explode.

Petitioner alleges that the videotape was a "re-creation" or reenactment of the actual incident and that the trial court not only admitted the videotape without a proper foundation, but also allowed the jury to take the videotape in the jury room without a cautionary instruction.  Petitioner also contends that the videotape was used for a purpose other than the purpose for which it was admitted and that it was offered to prejudice the jury against him by showing that he was a bad person who caused explosions.

Petitioner raised this issue in his motion for post-appellate relief.  The court stated in its order denying the motion that Petitioner failed to raise the issue on appeal.  The trial court also stated that there was no error in admitting the videotape because it was designed to show the manufacturing process for methamphetamine.

In Michigan, physical evidence that is not involved in the charge against a defendant is not admissible as substantive evidence.  *People v. Van Leuven*, 251 Mich. 249, 251; 231 N.W. 555, 556 (1930),  But "[d]emonstrative evidence, including physical objects alleged to be similar to those involved in the incident at issue, is admissible where it may aid the fact finder in reaching a conclusion on a matter material to the case."  *People v. Castillo*, 230 Mich. App. 442, 444; 584 N.W.2d 606, 608 (1998).

22

Here, the prosecutor referred to the videotape as a "simulation," 7/31/12 Trial Tr. at 207, ECF No. 17-3, PageID.685, and the state policeman who testified about the videotape said that he believed the flash fire depicted in the videotape was *similar to* what occurred in Petitioner's case. *Id.* at 209-210, PageID. 687-688 (emphasis added). The trial court then stated that the videotape would be admitted for demonstrative purposes, with the recognition that the bottle depicted in the videotape was not the one used in Petitioner's case. *Id*. at 210, PageID.688. The videotape was not admitted in evidence as substantive evidence.

Furthermore, the videotape likely aided the jurors in reaching a conclusion on a material issue. In fact, they requested the exhibit during their deliberations, and the trial court allowed them to take a laptop and a digital format of the videotape into the jury room for viewing. 8/2/12 Trial Tr. at 634-635, ECF No. 17-5, PageID.1113-1114. There is no reason to believe that the jurors misunderstood the purpose of the videotape. Therefore, Petitioner's right to due process was not violated by the admission of the videotape as an exhibit, and he has no right to relief on his claim.

## F. The Prosecutor's Conduct (Claim VI)

Petitioner claims that the prosecutor engaged in misconduct during closing arguments by: (1) describing Petitioner and his associates as "meth heads;" (2) bolstering the testimony of his witnesses and vouching for Lara's credibility; and (3) leading the jury to conclude that none of the prosecutor's witnesses were involved

in the crime, because the prosecutor and his investigators had conducted interviews and reviewed the evidence.  Petitioner contends that this conduct violated his right to due process and a fair trial.

The trial court rejected Petitioner's claim when he first raised the claim in his post-appellate motion.  The court mistakenly thought that the Michigan Court of Appeals had addressed some of the sub-claims on appeal.  The court also stated that Petitioner did not have a reasonably likely chance of acquittal without the comment about "meth heads."

### 1. Clearly Established Federal Law

On habeas review, " 'state courts have substantial breathing room when considering prosecutorial misconduct claims because constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.' " *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015) (quoting *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006)).  Further, even though prosecutors must "refrain from improper methods calculated to produce a wrongful conviction," *Viereck v. United States*, 318 U.S. 236, 248 (1943), prosecutorial-misconduct claims are reviewed deferentially in a habeas case, *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).

When the issue is the prosecutor's remarks during closing arguments, the "clearly established Federal law" is the Supreme Court's decision in *Darden v.*

*Wainwright*, 477 U.S. 168 (1986).  *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (*per curiam*).  In *Darden*, the Supreme Court stated that

> it "is not enough that the prosecutors' remarks were undesirable or even universally condemned."  *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)].  The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974).  Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power."  *Id.*, at 642, 94 S.Ct., at 1871.

*Darden*, 477 U.S. at 181.  Additionally, when deciding whether prosecutorial misconduct mandates habeas relief,

> the Court must apply the harmless error standard. *Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir. 1979). The Court must examine "the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Department of Corrections,* 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips,* 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982)), *cert. denied,* 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666 (1994).

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997).

### 2. Application

#### a. "Meth Heads"

Petitioner objects to the prosecutor's comment that Petitioner and other prosecution witnesses in the case "look[ed] like meth heads."  8/2/12 Trial Tr. at 568, ECF No. 17-5, PageID.1047.  Petitioner claims that the comment stereotyped him and his associates as degenerative individuals.

The prosecutor, however, immediately followed his remark about "meth heads" by saying, "But you can't find them guilty because he might look like a meth head.  There has to be evidence."  *Id.*

Furthermore, although courts should not encourage "gratuitous insults" of the defendant by a prosecutor," *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000), Petitioner and his associates admitted to being drug addicts or at least using illicit controlled substances at some point in their lives.  In Darden, moreover, the Supreme Court determined that the defendant was not deprived of a fair trial even though the prosecutor called the defendant an animal who "shouldn't be out of his cell unless he has a leash on him and a prison guard at the other end of that leash."  *Darden*, 477 U.S. at 179-183 and 180 n. 12.

The Sixth Circuit Court of Appeals denied habeas relief in a case where the prosecutor called the defendant a "deadbeat," "thief, "creep," and "liar."  *Olsen v. McFaul*, 843 F.2d 918, 930 (6th Cir. 1988).  In another case, the Sixth Circuit denied habeas relief where the prosecutor called a defense expert a "defense whore." *Richardson v. Palmer*, 941 F.3d 838, 852 (6th Cir. 2019).

Referring to Petitioner and his associates as "meth heads" was mild in comparison.  The remark did not deprive Petitioner of a fair trial.

### b. Bolstering and Vouching

Petitioner asserts that the prosecutor vouched for Lara's credibility when he said: "Vickie Lara for all her demons, I submit to you did a fairly credible job testifying," and, "her testimony was pretty spot-on." 8/2/12 Trial Tr. at 574-75, ECF No. 17-5, PageID.1053-1054. According to Petitioner, "spot on" meant entirely correct, and by describing Lara's testimony as credible, the prosecutor implied that he had special knowledge of the truthfulness of her testimony and he placed the prestige of his office behind Lara's testimony. Petitioner also contends that the prosecutor's comment amounted to vouching because he did not offer any evidence to support his opinion that her testimony was credible.

Prosecutors should refrain from interjecting their personal beliefs into the presentation of their cases, *United States v. Young*, 470 U.S. 1, 8-9 (1985), *Stermer*, 959 F.3d at 725, and from stating a personal opinion on the credibility of witnesses or the defendant's guilt, *United States v. Daniels*, 528 F.2d 705, 709 (6th Cir. 1976).

> "Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility…." [*United States v. Francis*, 170 F.3d 546, (6th Cir. 1999)] (citations omitted). Similarly, "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury." *Id.* at 551 (citation omitted).

*United States v. Acosta*, 924 F.3d 288, 299 (6th Cir. 2019).

27

This does not mean "that every favorable comment on a government witness constitutes prosecutorial misconduct. *Id*. at 300. "[I]n each case, the effect of such comments must be considered in the context of the prosecutor's other statements, the defense arguments, and the evidence presented at trial." *Id*. A prosecutor's remarks must "be rooted in the evidence." *Stermer*, 959 F.3d at 725.

Contrary to Petitioner's allegations, the prosecutor rooted his comments about Lara in the evidence. He stated that Lara's testimony was corroborated by testimony from Armatti and Black and fit the other evidence in the case. 8/2/12 Trial Tr. at 575-576, ECF No. 17-5, PageID.1054-1055. The prosecutor did not purport to have information known only to the prosecution. The trial court, moreover, instructed the jurors that it was their job to weigh the credibility of the jurors. *Id*. at 604-607, PageID.1083-1086. The disputed remarks did not deprive Petitioner of a fair trial.

### c. Unsworn Testimony

Petitioner contends that the prosecutor offered unsworn testimony when he said:

> And we picked the ones we believed were not involved in making or using methamphetamine. Lara, Black, and Armatti, and we listened to what they had to say and does it fit with the rest of the evidence that was found at the scene, and it does. It does.

*Id*. at 578, PageID.1057. Petitioner contends that these remarks were undisputedly false because Armatti was prosecuted for his involvement in the crimes.

"Misrepresenting facts in evidence can amount to substantial error because doing so 'may profoundly impress a jury and may have a significant impact on the jury's deliberations.' " *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 646 (1974)); *accord Stermer*, 959 F.3d at 732 (stating that "a prosecutor cannot misrepresent the facts in evidence"); *Byrd*, 209 F.3d at 535 (stating that "[i]t is improper for a prosecutor, during closing arguments, to bring to the attention of the jury any 'purported facts that are not in evidence and are prejudicial.' ").

Here, the prosecutor appears to have misstated the evidence when he said that the prosecution picked witnesses who were not involved in making or using methamphetamine.  Although Lara, Black, and Armatti apparently were not using methamphetamine on the night in question, there was evidence that both Lara and Black purchased Sudafed for use in making methamphetamine, and Armatti testified that he was charged initially with operating and maintaining a drug house.

But even if the prosecutor misstated the facts when he said that the prosecution picked witnesses who were not involved in making methamphetamine, "[i]inappropriate comments alone do not justify reversal where the proceedings were 'otherwise fair.' "  *United States v. Henry*, 545 F.3d 367, 377 (6th Cir. 2008) (quoting *Young,* 470 U.S. at 11).  "If a prosecutor's comments were improper, the question becomes whether they 'so infected the trial with unfairness as to make the

resulting conviction a denial of due process.' " *Stermer*, 959 F.3d at 725 (quoting

*Darden*, 477 U.S. at 181).

> To decide this question, "the remarks must be examined within the context of the trial to determine whether the prosecutor's behavior amounted to prejudicial error. In other words, the Court must consider the probable effect the prosecutor's response would have on the jury's ability to judge the evidence fairly." *Young*, 470 U.S. at 12, 105 S.Ct. 1038.

*Id*. at 726.

The prosecutor's brief remark about picking witnesses who were not involved in making methamphetamine probably did not affect the jury's ability to judge the evidence fairly because the witnesses testified about their involvement with controlled substances, the charges that were brought against them, and the favorable outcome of their cases. Armatti testified that he was addicted to morphine at the time, that he was charged with operating and maintaining a drug house, that he pleaded guilty to the lesser charge of using morphine, and that he received no jail time. 8/1/12 Trial Tr. at 341-342, 392-393, ECF No. 17-4, PageID.819-820, 870-871.

Black testified that she was charged with operating and maintaining a methamphetamine laboratory, that the charge was reduced to use of morphine, and that she was a morphine addict at the time of the crime. *Id.* at 408-409, 412, PageID.886-887, 890. Although Hill denied using drugs on the night of the crimes, he testified that he previously used morphine and methamphetamine. He also

30

sk

indicated that he was convicted of the same crime as Petitioner and that he received no benefit to testifying. *Id.* at 470, 494, 497, PageID.948, 972, 975. Lara testified that she was charged with a serious felony, but that the prosecutor gave her immunity, and that she was "clean" of methamphetamine and all illicit drugs. *Id.* at 318, 320, 329, PageID.796, 798, 807.

Furthermore, the trial court instructed the jurors that the lawyers' arguments were not evidence and that they should render their verdict on only the admissible evidence. 8/2/12 Trial Tr. at 602-604, ECF No. 17-5, PageID.1081-1083. Juries are presumed to follow a court's instructions to them, *Richardson v. Marsh*, 481 U.S. 200, 211 (1987); *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001), and an instruction that the attorneys' arguments are not evidence can cure improprieties in closing arguments. *Byrd*, 209 F.3d at 537 (citing *United States v. Carroll*, 26 F.3d 1380, 1389 n. 12 (6th Cir. 1994)).

In light of the trial court's instructions and the candid testimony of the witnesses regarding their involvement with illicit drugs, the probable effect of the prosecutor's brief remarks about the people he chose as witnesses was negligible. The remarks did not infect the trial with such unfairness as to deprive Petitioner of due process or a fair trial. All of Petitioner's prosecutorial-misconduct claims lack merit.

### G. Ineffective Assistance (Claim VII)

Petitioner alleges that his trial and appellate attorneys rendered constitutionally deficient performance.  Specifically, Petitioner contends that his trial counsel failed to object to:  (1) the constructive amendment of the charged crime at the close of the proofs; (2) the trial court's enforcement of an illusory hearsay exception; (3) the prosecutor's subornation of perjury; and (4) the prosecutor's use of demonstrative evidence as substantive evidence and the trial court's decision to send the evidence into the jury room.  As for appellate counsel, Petitioner contends that counsel refused to address issues that he advocated and, instead, raised weaker issues and gave cursory treatment to those issues.

Petitioner first raised this issue in his post-appellate motion.  The trial court, nevertheless, stated that the Michigan Court of Appeals addressed the issue and that, even if appellate counsel failed to raise some issues on appeal, Petitioner did not have a reasonable chance of acquittal.

### 1. Clearly Established Federal Law

To prevail on a claim about trial counsel, Petitioner must show that his trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." *Id*. Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

*Strickland* is also the proper standard for evaluating a claim about appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on a claim about appellate counsel, Petitioner must show: (1) that appellate counsel's performance was objectively unreasonable; and (2) a reasonable probability that, but for his counsel's unprofessional errors, he would have prevailed on appeal. *Id*. at 285-86 (citing *Strickland*, 466 U.S. at 687-91, 694).

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 2. Application

#### a. Trial Counsel

Petitioner asserts that trial counsel was ineffective because she failed to object to: a constructive amendment of the charged crime; the trial court's enforcement of an illusory hearsay exception; the prosecutor's subornation of perjury, and the prosecutor's use of demonstrative evidence as substantive evidence and the trial court's decision to send the videotape into the jury room. As pointed out above, however, there was no constructive amendment of the charges and the alleged error in the jury instructions was harmless, and the videotape was properly admitted in evidence as demonstrative evidence, not substantive evidence. Therefore, trial counsel was not ineffective for failing to object to those issues. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Furthermore, it was defense counsel who elicited details about Armatti's criminal history after Armatti volunteered information about his domestic violence conviction. *See* 8/1/12 Trial Tr. at 372-373, ECF No. 17-4, PageID.850-851. And defense counsel *did* object to Armatti's alleged hearsay on whether there was a conversation about making methamphetamine. *See id*., at 349, PageID.827. She was not ineffective for failing to make another objection after the prosecutor offered an exception to the hearsay rule and the trial court overruled her initial objection.

34

Petitioner's underlying claims lack merit.  Therefore, trial counsel's alleged failure to object did not fall below an objective standard of reasonableness.  Even if it did, there is not a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Petitioner fails to satisfy both prongs of the *Strickland* test.  Therefore, he has no right to relief on his claim about trial counsel.

### b. Appellate Counsel

Petitioner contends that his appellate attorney did not raise all the issues that Petitioner wanted him to raise on appeal.  But counsel was appointed for Petitioner, and an indigent defendant has no constitutional right to compel appointed counsel to raise all nonfrivolous claims on appeal.  *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Furthermore, Petitioner's present claims lack merit for reasons given elsewhere in this opinion.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

Petitioner, nevertheless, maintains that appellate counsel gave cursory treatment to the issues that he raised.  The Michigan Court of Appeals did say that counsel provided cursory treatment for some issues.  With one exception, however, the Court of Appeals discussed the issues and found no merit in the claims.

This Court is not persuaded that the result of the appeal would have been different if counsel had been more thorough in his discussion of the issues or if he had raised all of Petitioner's current claims on appeal.   The trial court, therefore, reasonably concluded that appellate counsel was not ineffective.   Petitioner has no right to relief on his claim about appellate counsel.

## H.  The Right to Present a Defense and to Confront Witnesses (claim VIII)

In his eighth and final claim, Petitioner alleges that the trial court deprived him of his right to present a defense and his right to confront Lara with her bias, credibility, and motivation for testifying.   This claim arose when defense counsel asked Lara on cross-examination whether she ever said that Armatti called her and told her not to say anything to the police about what happened.   Lara denied making that statement, but then testified that Officer Rector was angry with her because she botched the case against Armatti.   8/1/12 Trial Tr. at 324-327, ECF No. 17-4, PageID.802-805.

When the prosecutor objected to these remarks because defense counsel was impeaching Lara with a collateral matter, the trial court agreed and sustained the objection.   *Id*. at 327-329, PageID.805-806.   Petitioner contends that the trial court's ruling prevented him from inquiring into Lara's fear of Armatti and possible bias for testifying as she did at Petitioner's trial.

36

On direct appeal, Petitioner raised this issue as the denial of his right to present a defense.   The Michigan Court of Appeals found no merit in the claim because: (1) Petitioner did not present any argument that a particular rule of evidence was arbitrary or disproportionate to the purposes it was designed to serve and, therefore, he abandoned any claim that the Michigan Rules of Evidence denied him the right to present a defense; (2) Lara's testimony previously was impeached by other means and, therefore, the trial court did not abuse its discretion; and (3) even if the evidence was improperly excluded, the error was harmless because Lara's credibility was already impeached and there was other substantial evidence that Petitioner was involved in the charged offense.

### 1. Clearly Established Federal Law

"[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' "  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).    The Constitution also guarantees defendants in criminal prosecutions "the right . . . to be confronted with the witnesses against him."  U.S. CONST. amend. VI.  This right is "applicable to the States through the Fourteenth Amendment," *Idaho v. Wright*, 497 U.S. 805, 813 (1990), and it "includes the right to cross-examine witnesses." *Richardson,* 481 U.S. at 206.

However, neither the right to defend, nor the right to confront witnesses, is absolute.  *See Forensic v. Birkett*, 501 F.3d 469, 475 (6th Cir. 2007) (stating that "[t]he right to present a defense . . . is not absolute"), and *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005) (stating that, "[a]lthough a defendant is guaranteed the right to confront the witnesses against him, this right is not absolute").  "Generally speaking, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original).   When it is merely the *extent* of cross-examination that is limited, a trial court retains considerable discretion to bar exploration of a relevant subject on cross-examination.  *Dorsey v. Parke*, 872 F.2d 163, 166-67 (6th Cir. 1989).  "Where the trial court limits the extent of cross-examination, the inquiry for the reviewing court is 'whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory."  *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006) (quoting *Dorsey*, 872 F .2d at 167), as amended on denial of reh'g and reh'g en banc (Feb. 15, 2007).

## 2.  Application

Petitioner was not prevented from asserting a defense or cross-examining Lara as to whether Armatti tried to prevent her from talking to the police.  He was merely

barred from asking Lara for details about what Officer Rector said to her in connection with Armatti's case.  The trial court, moreover, made it clear that defense counsel could interrogate Lara on any prior statements that were inconsistent with her trial testimony.  8/1/12 Trial Tr. at 328-329, ECF No. 17-4, PageID.806-807. Additionally, as the Michigan Court of Appeals pointed out,

> Lara's credibility was already called into question because she received immunity in exchange for her testimony.  [H]er credibility was also attacked on cross-examination by testimony regarding her use of controlled substances and alcohol.  She was also impeached regarding statements she previously made to the police . . . .
>
> . . . .  Moreover, the only statements in Lara's testimony that directly linked defendant to the charged offense were that defendant screamed at Black for buying the wrong Sudafed and that defendant told Black exactly what kind of Sudafed to purchase.  Even if the jury discounted Lara's testimony, there was still substantial evidence that defendant was involved in the charged offense.  Black testified that she was yelled at for purchasing the wrong type of Sudafed and that it was defendant and Hill who yelled at her.  Armatti also testified that defendant yelled at Black that she had purchased the "wrong stuff."  Further, Black and Armatti both testified that defendant was involved in a conversation about making methamphetamine.  Armatti testified that defendant told Hill what ingredients to obtain when he went with Black to obtain more Sudafed.  Further, Armatti testified that he saw defendant cleaning pills in the kitchen.  He also testified that when Hill returned from Marquette, Hill and defendant were in the kitchen together in front of the sink.  Finally, Armatti testified that he saw defendant adding pills to the Gatorade bottle.

*Howe*, 2014 WL 2118160, at *5.

Given the substantial amount of evidence against Petitioner apart from Lara's testimony and the fact that Lara was discredited in other ways, the limitation placed

on Petitioner's cross-examination of Lara was harmless. The jury had enough information to assess the defense theory without further cross-examination of Lara on whether she angered Officer Rector during Armatti's trial.

The alleged denial of Petitioner's right to present a defense also was harmless. Petitioner was able to defend himself by testifying in his own defense and by producing Hill as a defense witness to further support his theory of the case. The Court denies relief on Petitioner's claim.

### III. Conclusion

Petitioner's claims lack merit, and to the extent the state courts adjudicated any of his claims on the merits, the courts' rulings were not so lacking in justification that there was an error beyond any possibility for fairminded disagreement. The Court, therefore, denies the amended habeas petition with prejudice.

The Court declines to issue a certificate of appealability because reasonable jurists could not disagree with the Court's resolution of Petitioner's claims; nor could reasonable jurists conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Nevertheless, if Petitioner appeals this decision, he may proceed *in forma pauperis* because an appeal could be taken in good faith.

s/ Victoria A. Roberts
VICTORIA A. ROBERTS
Dated: 9/28/2020                    UNITED STATES DISTRICT JUDGE